## Quinn Unemployment Compensation Case.

Argued March 5, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*Harry P. O'Neill, Jr.,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY ERVIN, J., March 21, 1962:

In this unemployment compensation case the bureau, the referee and the board of review all concluded that the appellant's unemployment was due to his being discharged for willful misconduct connected with his work, under §402(e) of the Unemployment Compensation Law, 43 PS §802(e).

Appellant had been a chronic absentee and had been suspended on two occasions for excessive absenteeism and finally was discharged in December 1959. He was reinstated to his job through the intervention of his union and was instructed that future absenteeism would not be condoned.

June 6, 1960 was the first day of work after a strike which had occurred in the employer's plant and which had been settled on Saturday, June 4. On June 6 the appellant reported for work at 7:30 in the morning and at 8 a.m. came to his supervisor and stated that he didn't feel well and wanted to go home. The supervisor asked him whether he was under a doctor's care and he told him that he was under the care of Dr. Moylan and produced pills that the doctor had prescribed for him. He indicated that he had a sick stomach and trouble with his nerves. The supervisor reminded him that he had refused to be examined by the company doctor but gave him permission to leave work and go home, with the suggestion that he contact a specialist to further diagnose his trouble.

On June 7, 8, 9 and 10 appellant was absent from work; on June 14 he reported to work but went home early; June 15 and 16 he did not work and on June 17 he reported off work; on June 20, 21, 22 and 23 he worked; June 24 he was off and June 27 and 28 he reported off. He was discharged on June 28, 1960 for excessive absenteeism. He did not see a specialist as suggested by his supervisor. The appellant admitted that some time after the strike was settled the supervisor requested him to see the company doctor but he stated that he did not do so because Mr. Warren of the union advised him not to do so.

We are convinced from a reading of this entire record that the appellant's last absences were caused by an illness from which he claimed to be suffering and we are also convinced that he gave notice to the company of his illness. If these were all the facts in the case we would feel obliged to reverse the decision of the board. In *Flynn Unemployment Compensation Case,* 174 Pa. Superior Ct. 71, 98 A. 2d 490, we clearly held that absences due to illness do not constitute willful misconduct. In that case we also said, at page 74,

that "repeated absence due to illness, in the face of warnings by the employer, might constitute misconduct if the employe failed to give notice." See also *Donnelly Unemployment Compensation Case,* 182 Pa. Superior Ct. 23, 124 A. 2d 386.

It is apparent from the record that the employer in the present case had serious doubts as to the reality of the appellant's illness. That was undoubtedly the reason for the supervisor's request that the appellant submit to an examination by the company doctor and also for the further request that he see a specialist or another doctor. The appellant failed or refused to do either one of these things. In our opinion he could not justify a refusal to be examined by the company doctor. He should have welcomed such an examination if for no other reason than his own good. We do not understand why it was necessary for him to call the union representative before making a decision on this point. Certainly his employer was entitled to know whether his illness was real or feigned and if real, whether something could be done to alleviate it. The refusal of the appellant to comply with this request distinguishes this case from the cases above cited and we think constituted willful misconduct within the meaning of §402(e) of the Unemployment Compensation Law, 43 PS §802(e).

Decision affirmed.

DISSENTING OPINION BY FLOOD, J.:

In this case the board refused compensation because of excessive absences, but made no finding as to the reasons for the absences. It appears from the record, as stated in the majority opinion, that these absences were due to illness and therefore do not constitute wilful misconduct. *Flynn Unemployment Compensation*

*Case,* 174 Pa. Superior Ct. 71, 98 A. 2d 490 (1953). Nor was there any failure to give notice.

The things which the court finds to be wilful misconduct were apparently not considered by the board and no findings were made with regard to them. I see no evidence in the record that the claimant was feigning illness. In fact, the employer's representative said he knew he was under the doctor's care and was flushed and shaking when he asked to go home on June 14th. There was no claim by the employer, no evidence and no finding that the claimant was discharged because he failed to see the company doctor twenty-two days earlier. If this failure was wilful misconduct, which seems unlikely under the evidence, it was not the cause of his discharge. Nor is there any finding that his illness was such as to make him unavailable for suitable work.

MONTGOMERY, J., joins in this dissent.